**Mack AYTCH, Father of Janice Nora Aytch, Lazella Aytch, Gwendolyn Aytch, Pamela Rena Aytch, Mark Aytch and John Aytch, et al., Plaintiffs,**

v.

**Harrison MITCHELL, President, C. E. Garman, Member, et al., Board of Directors of Watson Chapel School District No. 24 of Jefferson County, Arkansas, et al., Defendants.**

**No. PB 70-C-127.**

United States District Court,
E. D. Arkansas,
Pine Bluff Division.

Jan. 13, 1971.

and Jefferson County Bd. of Election Commissioners.

Joseph Rich, Dept. of Justice, Washington, D. C., and W. H. Dillahunty, U. S. Atty., E. D. Ark., Little Rock, Ark., for the United States, intervenor.

## MEMORANDUM OPINION

OREN HARRIS, District Judge.

This action was brought by the plaintiffs [1] on their own behalf and as a class [2] against the defendants [3] on December 11, 1970, seeking a temporary restraining order and preliminary injunction. Supporting the motion for temporary restraining order is an affidavit signed by three members of the class seeking to enjoin and restrain the defendants from conducting an election scheduled for December 15, 1970, which would divide the Watson Chapel School District No. 24 of Jefferson County, Arkansas, into two separate districts. Timely notice by the plaintiffs was given to the defendants of the request for temporary restraining order.

The motion for temporary restraining order and preliminary injunction was presented to this Court in Little Rock, Arkansas, with counsel for the plaintiffs and counsel for the defendants being present on December 11, 1970, at 2:00 p. m.

It was represented to the Court that a valid petition had been obtained with sufficient names under state law and

George Howard, Jr., Pine Bluff, Ark., for plaintiffs.

John Norman Warnock, Camden, Ark., for Watson Chapel School Dist.

R. A. Eilbott, Jr., Pine Bluff, Ark., for Jefferson County Bd. of Education

1. Mack Aytch, Father of Janice Nora Aytch, Lazella Aytch, Gwendolyn Aytch, Pamela Rena Aytch, Mark Aytch and John Aytch; Mrs. Frances Crosby Mc-Gehee, Mother of Herma Jean McGehee, Erma Jean McGehee and Theodis Mc-Gehee; Mrs. Rosie Hayman, Mother of Verdean Hayman; and Mrs. Mary Dulaney, Mother of Mary Ann Dulaney.

2. The named plaintiffs are members of the class of persons being represented by the plaintiffs who are Negro patrons of Watson Chapel School District under Rule 23 of the Federal Rules of Civil Procedure.

3. Harrison Mitchell, President; C. E. Garman, Jimmy Shults, Carlton Rhode and Don Crossett, Members of the Board of Directors of Watson Chapel School District No. 24 of Jefferson County, Arkansas: Dale Spradlin, Superintendent of Watson Chapel Schools; and Watson Chapel School District No. 24 of Jefferson County, Arkansas, A Public Body Corporate; Donald H. Smith, William H. Dunklin and Mrs. Ann McClaran, Jefferson County Board of Election Commissioners; Jefferson County Board of Election Commissioners; Jefferson County Board of Education and Howard Parette, Fred M. Bellingrath, R. E. Jeter, William B. Albright and Harold Strange, Members of the Jefferson County Board of Education.

presented to the Jefferson County Board of Education for an election to be called for the district to determine whether it should be divided into two separate and distinct districts. The Jefferson County Board of Education considered the petition and issued a call for an election to be held in the school district on December 15, 1970. Pursuant thereto, the Jefferson County Board of Election Commissioners[4] proceeded to call an election for the purposes outlined in the petition separating the district into two school districts. It was further represented to the Court that unless restrained, the defendant, Jefferson County Board of Election Commissioners, would conduct an election designed to impede this Court's decrees directing the Watson Chapel School District to reorganize and operate its schools on a unitary-nondiscriminatory basis and would materially interfere with the efforts of the school officials to comply with and carry out the orders of the Court to desegregate the school district.[5]

At the same time, the plaintiffs filed a motion for temporary restraining order, they filed a complaint for permanent injunctive relief enjoining the defendants from conducting the proposed election within the Watson Chapel School District scheduled for December 15, 1970. Upon the record presented following the hearing at which counsel for plaintiffs and defendants presented their respective contentions and the Court being convinced that the request was proper issued an order temporarily restraining the defendants from conducting the election as proposed and by agreement with counsel for the parties scheduled a hearing on the merits of the proposal January 11, 1971, at Pine Bluff, Arkansas.[6]

The United States of America as the plaintiff in the original pleadings brought against the school district, H 70–C–10, filed a motion for leave to file a supplemental complaint in the original pleadings and at the same time a motion for consolidation of the two actions. The defendants object to the proposal of the government.

The case was heard by the Court on January 11, 1971, as scheduled. All parties appeared and were represented by counsel.[7]

The defendants, members of the school board and superintendent, presented an oral motion to dismiss the

4. The action of the Jefferson County Board of Education and the Jefferson County Board of Election Commissioners was not improper and in accordance with state law, unless restrained in an action such as this proceeding.

5. In a separate proceedings, H 70–C–10, the United States of America brought a desegregation suit against the defendant school district on July 9, 1970. Several orders of this Court were entered in connection with the Government's action against the school district. On November 17, 1970, this Court entered a Memorandum Opinion and Order enjoining the school district, the school board and its officers from discriminating in the operation of the school on the basis of race against the black students attending the public schools of the district and requiring the school district to operate a unitary school under specific direction of the Court. The Memorandum Opinion describes the situation existing in the school district, which includes findings

and conclusions of the Court as a basis for its Order filed therein. Both the Memorandum Opinion and Order in that case are made a part of this record and the basis of this litigation.

6. Watson Chapel School District No. 24 of Jefferson County, Arkansas, is in part within the city limits of Pine Bluff, Arkansas, and a substantial part contiguous to and outside the city of Pine Bluff, Arkansas.

7. The plaintiffs on their own behalf and as a class of Negro citizens were represented by Mr. George Howard, Jr. The defendants were represented by Mr. John N. Warnock. The defendants, Jefferson County Board of Education and Jefferson County Board of Election Commissioners, were represented by Mr. R. A. Eilbott, Jr. And the United States of America was represented by Mr. Joseph Rich of the Department of Justice, Washington, D. C., and Mr. W. H. Dillahunty, United States Attorney for the Eastern District of Arkansas.

injunctive proceedings against them on the basis that they had no responsibility for calling, holding or conducting an election under state law. The Court reserved judgment until the conclusion of the hearing.

By agreement of the parties and and with the approval of the Court, Olen Bearden, Sterling West and Robert Morris were made party defendants. They were responsible for the circulation of the petition to the patrons of the school district.[8]

The Court denied the government's motion to consolidate the two cases, H 70–C–10 and this proceeding, PB 70–C–127. However, the Court permitted the government by request to intervene in this proceeding and an order was entered accordingly.

Numerous witnesses testified on behalf of the plaintiffs and the defendants. Several exhibits were presented and received and the applicable provisions of the record in H 70–C–10 became a part of this record for such consideration as appropriate to this action for a permanent injunction to enjoin the defendants from holding and conducting the election.

The primary question presented is whether an Arkansas public school district faced with an obligation to integrate its schools may validly employ the Arkansas School and Election laws so as to divide the district into two separate and independent districts.

While this injunctive proceedings is an independent action, it is an outgrowth as already referred to herein of desegration litigation involving the schools of Watson Chapel School District No. 24 of Jefferson County, Arkansas.

As previously noted, the school district is under order of the Court to desegregate its schools and operate a unitary school system in accordance with the alternative plan recommended by the Department of Health, Education and Welfare.[9]

The Watson Chapel School District has existed for some thirty-five years or more and covers a substantial area and population. It has grown into a school complex with most of the black population living within the city limits of Pine Bluff and a larger white population most of whom live in the suburban and rural areas. It has two high schools and four elementary schools. It is undisputed that the school district has previously operated segregated schools under long-established state mandated dual system. It is commonly referred to as the Coleman complex with all black students in both elementary and high schools and Watson Chapel complex predominantly white in the elementary and high schools. In the Edgewood, L. L. Owen and Sulpher Springs elementary schools there are 1198 white students and 58 black students. In the Coleman elementary schools there are 831 black students and no white students. In the Watson Chapel School there are 926 white students and 54 black students. In the Coleman High School there are 736 black students and no white students. The testimony described the availability of classrooms and facilities of each school, predominantly white in the white schools and predominantly black in the black schools.

Most of the black population and students living within the City of Pine Bluff surround Coleman complex with an area of 3,200 acres. Most of the white population and students attending

8. Although the question was raised, the Court determined that it was not necessary to reach the question of sufficiency of the petition. However, it contained the names of 1,050 patrons of the district, more than required under state law. Neither does the Court reach the question raised by Mr. Eilbott on behalf of the

Jefferson County Board of Election Commissioners as to whether or not the Commission was required to hold the election.

9. See Memorandum Opinion and Order entered by the Court in H 70–C–10 November 17, 1970. Appeal pending with the Eighth Circuit Court of Appeals.

the Watson Chapel complex live in the surburban and rural areas within an area of approximately 66,000 acres. Although the school district is under orders to establish a unitary system, the proposed petition on which an election would be held would establish the two districts leaving each of the two areas, that is, the Coleman complex and the Watson Chapel complex, as they have been, except with two separate and independent districts.

The real estate value within the Watson Chapel District as shown by the assessments of the county is $8,656,365. The proposed two districts would leave the new Watson Chapel District with an assessment value of $7,600,000 and the new Coleman District of $1,257,210. It would leave the assessments of personal property of some $2,000,000 with about the same proportion of six to one. Utility assessments are minimal for the district, approximately $120,000.

For the school year 1970–71 the revenue of Watson Chapel School District was in excess of $1,500,000 with approximately one-third allocated to the Coleman schools. It would appear to be a reasonable inference, and the Court so finds, that this would be approximately the division of revenues for each independent school district should the election be held and two separate and independent districts established. However, it should be noted that substantially more Title 1 funds go to Coleman as revenue for the school than are allocated to Watson Chapel. The Coleman area has substantially more welfare recipients and is in some respects considered to be an impoverished area.

At the hearing on the motion for preliminary and permanent injunction, the Jefferson County Board of Education and the Jefferson County Board of Election Commissioners, not improperly assumed a position of complete neutrality. The plaintiffs in this case and the government contend that if the election is held and two districts established under state law from the existing district, it would be racially motivated, conceived from desegregation litigation and as racially inspired would deprive the plaintiffs of federally protected rights and frustrate the decrees of this Court. The efforts to establish two districts out of one were not undertaken until the litigation was brought by the government for desegregation of the Watson Chapel schools and the very fact that the proposed division of the district would leave the separate school districts with approximately the same situation that has existed for many years, is without question an effort to circumvent the orders of this Court.

The position of the defendants is that their efforts to establish two districts in the manner described were not motivated by a desire to frustrate the decrees of the Court or deprive the plaintiffs of any federally protected rights, but were based solely on the efforts to maintain neighborhood schools.

The jurisdiction of the Court is premised upon 28 U.S.C.A. § 1343(3), (4) and 42 U.S.C.A. §§ 1981 and 1983. In addition, the government contends jurisdiction is provided under Section 707(a) (b) of the Civil Rights Act of 1964 (42 U.S.C.A. § 2000e–6(a) (b) and 28 U.S.C. A. §§ 1345 and 2201.

The Court is not unmindful that prior to the filing of the government's complaint for desegregation of the Watson Chapel Schools in July, 1970, there was strong sentiment in the Watson Chapel area for separating the district into two districts in the manner proposed by the petition for an election. The Court is also aware of the determined resistance by the Watson Chapel area residents to prevent an integrated, unitary school system as required by law, well established by the Brown decision in 1954 and enumerable cited cases since.

From the record established in this proceeding, the testimony of witnesses, exhibits thereto, arguments of counsel and briefs the Court concludes that the division of the existing district as proposed would inflict severe damage upon

the Coleman area.[10] If the Coleman district proposed to be established had to rely upon the revenues that it would receive, it is questionable that it could provide any kind of quality education for its students or improve or maintain its present accreditation. Watson Chapel school has a North Central Association for Secondary Schools and Colleges rating. Coleman does not enjoy North Central rating, but only an "A" rating of the State of Arkansas. In addition, the Coleman school would find it most difficult to employ or retain in employment competent personnel.

The Court further concludes that to permit the division in the school district as proposed would maintain approximately the racial imbalance that exists in the two schools. It is alleged and undenied that in the Coleman schools with approximately 1700 students the proposed district would be 96% black and in the Watson Chapel schools with over 2,000 students it would be predominantly white by some 94%. Should the election as proposed be held and successful, it is obvious that instead of having an integrated school system in the present school system there would be, pursuant to state law, an approximately all-black district on the one hand and an all-white district on the other. The Court concludes that this would result in establishing segregated school districts by state law nullifying what this Court has previously ordered as federally protected rights well established by the Constitution, the Congress of the United States and the United States Supreme Court.

While the evidence at the trial directed to motive was minimum, the only reason given for the proposed division of the school district was to maintain neighborhood schools. The Court is not persuaded by this contention in view of the determined action taken by the school district to avoid the integration of the existing schools. The Court is convinced and finds that the prevailing motivation of the efforts was in the belief or hope that by this action they could keep their children out of integrated schools and in schools denominated as schools of quality education.

Having stated the facts in some detail, the Court finds with precision that regardless of the motives of those proposing the action by the election that if permitted and successful it would frustrate the Court's decrees and would without doubt impede the district in carrying out its obligations.

Had the patrons of the school district attempted the proposed establishment of two districts at a time when there were no racial implications and prior to the district becoming involved in desegregation litigation, it may well have been that no constitutional objection would have been offered, but that is not the situation that exists in the Watson Chapel schools. The district has apparently made little progress in complying with the order of this Court toward establishing an integrated school system. The time for compliance is near. The issue and responsibility of the school district has reached its peak. At this time those who propose the separation of the district as a class cannot be permitted to use state laws and procedures to circumvent a responsibility decreed by this Court of competent jurisdiction. The Court, therefore, holds that as of this time and under existing circumstances a division of the existing Watson Chapel School District into two districts as proposed cannot be permitted and the proposed election for this purpose will be enjoined.[11]

---

10. The witnesses testified and it was generally agreed that if the election proposed were to be held establishing two independent districts, that it would be successful by a substantial vote.

11. The Court's attention has not been called to any cited case enjoining the holding of an election for the purposes stated in this proceeding. The Court knows of no such decision. The closest decision to it was by Judge J. Smith Henley, Chief Judge of this Court, in Burleson v. County Board of Election Commissioners of Jefferson County, D.C.,

1378

This memorandum incorporates the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

A decree in accordance with this opinion will be entered and all parties will bear their own costs.

308 F.Supp. 352 (1970), affirmed summarily by the United States Court of Appeals for the Eighth Circuit, 432 F.2d

1356, November 30, 1970. The issue is analogous and the conclusions in this case are based thereon.